IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CHRYSTOPHER DON PRECIADO, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:18-CV-57-Z-BR |
| | § | |
| LORIE DAVIS, Director, Texas | § | |
| Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO DENY
PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

Chrystopher Don Preciado ("Petitioner") filed a Petition for Writ of Habeas Corpus by a Person in State Custody challenging his conviction out of the 47th District Court of Potter County, Texas, for the felony offense of aggravated robbery, enhanced by one previous felony conviction, and resulting 40-year sentence. For the reasons stated below, the undersigned United States Magistrate Judge recommends Petitioner's application for federal habeas corpus relief be DENIED.

## I.    PROCEDURAL HISTORY

On August 20, 2009, Petitioner was charged by Indictment in Potter County, Texas with the first-degree felony offense of aggravated robbery in violation of Section 29.03 of the Texas Penal Code ("TPC"), enhanced by one previous felony conviction. (ECF 18-3 at 43). The indictment alleged two counts of aggravated robbery. (*Id.*). On March 18, 2010, a jury found Petitioner guilty of both counts and sentenced him to 40 years in prison. (ECF 17-10 at 29–30; 18-3 at 36); *see State v. Preciado*, No. 60,196-A. Petitioner filed a Motion for New Trial arguing he had been convicted twice for the same offense. (ECF 17-10 at 63–65). The trial court granted

Petitioner's motion regarding count two of the indictment and denied his motion with respect to count one. (*Id*. at 79). Count two was dismissed with prejudice on the State's motion. (*Id*. at 80–81). Trial counsel (also "appellate counsel") represented Petitioner at trial and on direct appeal. (ECF 18-1 at 6; 18-3 at 36).

On July 13, 2011, the Seventh Court of Appeals of Texas affirmed the judgment of the trial court on direct appeal. (ECF 17-8 at 1–8); *see Preciado v. State*, 346 S.W.3d 123 (Tex. App. 2011). The Texas Court of Criminal Appeals ("TCCA") granted Petitioner leave to file an out-of-time petition for discretionary review of the judgment of the Seventh Court of Appeals. (ECF 17-16; 18-4). The TCCA refused Petitioner's petition for discretionary review on March 18, 2015. (ECF 17-1); *Preciado v. State*, No. PD-1413-14 (Tex. Crim. App. 2015). On December 29, 2015, Petitioner filed an application for state writ of habeas corpus challenging his conviction. (ECF 18-18 at 6–24). The TCCA denied Petitioner's state habeas application without written order on December 13, 2017. (ECF 18-7); *see In re Preciado*, No. WR-80,751-02. On March 29, 2018, Petitioner filed the instant federal habeas petition. (ECF 3). On August 2, 2018, Respondent filed an answer. (ECF 15). On October 1, 2018, Petitioner filed a reply to Respondent's answer. (ECF 21).

## II.    PETITIONER'S GROUNDS

Petitioner contends he is being held in violation of the Constitution and laws of the United States for the following reasons:

1.  The Seventh Court of Appeals erred by misconstruing Texas Rule of Appellate Procedure 21.9(b) and Texas Code of Criminal Procedure Section 21.24(a), which violated Petitioner's Fifth and Fourteenth Amendment rights;

2.  The TCCA abused its discretion by not reviewing the validity of Petitioner's indictment in order to establish the trial court had subject-matter jurisdiction, which violated Petitioner's Fifth, Sixth, and Fourteenth Amendment rights;

3. The TCCA abused its discretion by failing to exercise its power of supervision to set precedent, which violated Petitioner's Fifth, Sixth, and Fourteenth Amendment rights;

4. Petitioner was denied effective assistance of counsel because his trial counsel failed to provide effective assistance during plea negotiations, which lead Petitioner to proceed to trial and violated Petitioner's Fifth, Sixth, and Fourteenth Amendment rights;

5. Petitioner was denied effective assistance of counsel because his trial counsel failed to quash the indictment or request the State make an election, which resulted in an erroneous indictment and violated Petitioner's Fifth, Sixth, and Fourteenth Amendment rights;

6. The cumulative effect of trial counsel's ineffective assistance violated Petitioner's Fifth, Sixth, and Fourteenth Amendment rights; and

7. Petitioner was denied effective assistance of counsel because his appellate counsel failed to properly prepare an appeal.

(ECF 3 at 6–9).

## III.    STANDARD OF REVIEW

A Section 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254. Section 2254 of Title 28 of the United States Code authorizes a federal court to entertain a petition for a federal writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). However, a court may not grant relief on any claim that was adjudicated on the merits in state court proceedings unless a petitioner shows that the prior adjudication:

1. Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2. Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

*Id.* § 2254(d). A decision is contrary to clearly established federal law if the state reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 412–13 (2000). An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle but unreasonably applies that principle to the facts. *Id*.

This Court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to both implicit and explicit factual findings. *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to the factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez,* 274 F.3d at 951 (holding that a full and fair hearing is not a precondition according to Section 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying Section 2254(d)'s standards of review). A "paper hearing" is sufficient to afford a full and fair hearing on factual issues, especially where the trial court and state habeas court were the same. *Hill v. Johnson,* 210 F.3d 481, 489 (5th Cir. 2000); *Murphy v. Johnson,* 205 F.3d 809, 816 (5th Cir. 2000).

Furthermore, a denial, even though it does not contain a written opinion, is not silent or ambiguous. *See Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits). It is a decision on the merits and is entitled to the federal statutes' standard of deference. 28 U.S.C. § 2254(d); *see also Neal v. Puckett,* 239 F.3d 683, 686

(5th Cir. 2001) (explaining that in the context of federal habeas proceedings, "adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive"). The Supreme Court has reconfirmed that Section "2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 562 U.S. 86, 100 (2011). Even if "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id*. at 98.

Moreover, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 101 (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)). This standard is difficult to meet, and the Supreme Court has affirmed that "it was meant to be" so. *Id*. at 102.

Finally, the Supreme Court has also held that review under Section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011). Perhaps more compelling, the Supreme Court made clear that Section 2254(e)(2)—the statutory mechanism through which Congress limited a petitioner's ability to obtain a federal evidentiary hearing (and to expand the federal habeas record)—has no application when a federal court reviews claims pursuant to Section 2254(d), whether or not a petitioner might meet the technical requirements of Section 2254(e)(2). *See id.* at 183–86 (showing that the Supreme Court explicitly rejected the proposition that Section 2254(d)(1) has no application when a federal court admits new evidence under Section 2254(e)(2)); *see also id.* at 203 n.20 ("Because Pinholster has failed to demonstrate that the adjudication of his claim based on the state-court record . . . [violated § 2254(d)(1),] our analysis is at an end. We are barred from

considering the evidence Pinholster submitted in the District Court that he contends additionally supports his claim.") (internal citation omitted). The Supreme Court reasoned:

> Today, we . . . hold that evidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.

*Id*. at 185. Therefore, this Court must review the reasonableness of the state court determinations under Section 2254(d), with reference only to the record actually before the state court.

## IV.    MERITS

### A. Petitioner's Grounds 1–3 Regarding the Seventh Court of Appeals and TCCA

The indictment alleged two counts of aggravated robbery. The first count alleged aggravated robbery by:

> intentionally, knowingly, or recklessly caus[ing] bodily injury to John Perez by cutting him with a knife, and the defendant did then and there use and exhibit a deadly weapon, namely, a knife, that in the manner of its use and intended use was capable of causing death or serious bodily injury, during the commission of the robbery.

(ECF 18-3 at 43). The second count alleged aggravated robbery by:

> intentionally or knowingly threaten[ing] and plac[ing] John Perez in fear of imminent bodily injury and death, and the defendant did then and there use and exhibit a deadly weapon, to-wit: a knife, that in the manner of its use and intended use was capable of causing death or serious bodily injury, during the commission of the robbery.

(*Id*.).

After a jury found Petitioner guilty of both counts and sentenced him to 40 years in prison for each (ECF 17-10 at 29–30), Petitioner filed a Motion for New Trial arguing he had been convicted twice for the same offense (*id*. at 63–65), which the trial court granted as to count two of the indictment and denied as to count one. (*Id*. at 79). Count two was dismissed with prejudice on the State's motion (*id*. at 80–81), and Petitioner was sentenced to one 40-year term of

imprisonment for aggravated robbery, enhanced based on the charge in count one of the indictment (ECF 18-3 at 36).

In his first three claims, Petitioner argues he was improperly charged with and convicted of the same aggravated robbery twice because the indictment alleged two counts of aggravated robbery, which were merely different ways he allegedly committed the same aggravated robbery. (*See* ECF 3 at 6–7). Petitioner argues that because his indictment was not truly one indictment with two counts, but rather one indictment alleging two different means of committing aggravated robbery in separate counts, the trial court did not have jurisdiction and a "double jeopardy violation allowed [Petitioner] to proceed to trial before a partial jury that was under the impression [Petitioner] was charged for [two] separate aggravated robberies…" (*See* ECF 22 at 9–10). Accordingly, Plaintiff argues the trial court should have granted a new trial as to the entire indictment. (*See* ECF 3 at 6).

The Seventh Court of Appeals considered Petitioner's argument regarding the indictment on direct appeal and affirmed the trial court's judgment. (*See* ECF 17-8). Subsequently, the TCCA refused to hear this argument upon a discretionary review. (*See* ECF 17-1; 17-2; 17-4; 17-5). Petitioner argues the TCCA abused its discretion by not reviewing the validity of the indictment to determine whether the trial court had jurisdiction and by failing to exercise its "power of supervision to set precedent." (ECF 3 at 6–7).

In *Evans*, the Fifth Circuit Court of Appeals stated:

> "'[w]hen it appears ... that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case,'" *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985) (alterations in original) (quoting *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984)), then the question "as to whether a state trial court was deprived of jurisdiction ... is a question foreclosed to a federal habeas court," *Liner*, 731 F.2d at 1203. An issue may be squarely presented to and decided by the state's highest court when the petitioner presents the argument in his application for

> postconviction relief and the state's highest court denies that application without written order. *See Alexander*, 775 F.2d at 599 ("By refusing to grant the appellant relief ... the Texas Court of Criminal Appeals has necessarily, though not expressly, held that the Texas courts have jurisdiction ...."); *see, e.g., McKay*, 12 F.3d at 68 (holding that an issue was squarely presented to the state's highest court when the petitioner presented the argument in a state application for postconviction relief and the Texas Court of Criminal Appeals denied the application without written order); *see also Garrett v. McCotter*, 807 F.2d 482, 484 (5th Cir. 1987) (determining that an issue has not been sufficiently presented to the state's highest court when that court dismissed the application for postconviction relief as improvidently set).

*Evans v. Cain*, 577 F.3d 620, 624–25 (5th Cir. 2009). In this case, Petitioner squarely presented the issue of the indictment's sufficiency to the TCCA in a petition for discretionary review, and the TCCA refused review. *See Rose v. Johnson*, 141 F. Supp. 2d 661, 695–96 (S.D. Tex. 2001) (citing *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994)) (TCCA's refusal of petition for discretionary review as to sufficiency of indictment foreclosed federal habeas corpus relief on the issue); *see also Cyphers v. Dir., TDCJ-CID*, No. 6:10CV429, 2011 WL 1980256, at *4–5 (E.D. Tex. Feb. 23, 2011) (TCCA's refusal to review sufficiency of indictment where Petitioner complained he was indicted for only one offense, but convicted for three offenses, foreclosed federal habeas corpus relief). Federal habeas corpus relief as to these grounds is thus foreclosed. *See Evans*, 577 F.3d at 624–25.

## B. Petitioner's Grounds 4-7 Regarding Ineffective Assistance of Counsel

Claims concerning the alleged ineffective assistance of counsel ("IAC"), whether at trial or on direct appeal, are reviewed under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). First, a petitioner must demonstrate his attorney's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88. A petitioner must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 580 U.S. ——, 137 S. Ct. 759, 775 (2017) ("[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland's* first prong is satisfied" (citation omitted)).

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752–53 (5th Cir. 2003).

Second, a petitioner must show his attorney's substandard performance prejudiced him. *See Strickland*, 466 U.S. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "The likelihood of a different result must be substantial, not just conceivable." *Id*. at 112. An inquiry into counsel's performance is unnecessary if a petitioner fails to show prejudice. *See Strickland*, 466 U.S. at 697.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of Section 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where the state court adjudicated IAC claims on the merits, this Court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen*, 563 U.S. at 190. In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland's* standard," but "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. AEDPA does not permit a de novo review of state counsel's conduct on federal habeas review of IAC claims. *Id*. at 101–02.

On federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*. at 101; *see Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of IAC claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'" and "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'") (quoting *Burt v. Titlow*, 571 U.S. 12, 22 (2013)).

### i.    Failure to Communicate Plea Offer

Petitioner asserts trial counsel failed to inform him of the "second plea offer." (ECF 3 at 7; 22 at 10–12). Failure to inform a defendant of a plea offer may constitute IAC. *Teague v. Scott*, 60 F.3d 1167, 1170–71 (5th Cir. 1995). Petitioner raised this claim in his state habeas proceedings. (*See* ECF 18-18 at 14–15). The TCCA remanded Petitioner's habeas petition to the trial court for findings of fact and conclusions of law regarding Petitioner's claims. (*See* ECF 18-11; 18-16 at 1;

18-19; 18-20). The trial court obtained an affidavit from defense counsel. Counsel's affidavit

stated:

> As the attorney for CHRYSTOPHER DON PRECIADO ["Claimant" or "Applicant"], and in the course of my representation of my client, I received a plea offer in this matter from the assistant district attorney in which, in exchange for a plea of guilty, the State would agree to recommend fifteen (15) years imprisonment in the Texas Department of Criminal Justice, Institutional Division, a fine of $500, the receipt of a DNA sample from [Claimant] for the CODIS system, and payment of the court costs and appointed attorney fees. This plea offer was in conjunction with a plea offer in Cause No. 60,197-A. I informed Applicant of the plea offers in both matters as well as the expiration date of November 25, 2009. Although Claimant contends that he contacted me stating that he was willing to work with the State, Claimant did not accept any plea offer prior to the expiration of the plea offer but instead was only interested in making counteroffers. Nevertheless, Claimant was not harmed by any perceived miscommunications since the Assistant District Attorney retendered the same offer on March 4, 2010 and kept the offer available until March 10, 2010.
>
> Prior to the beginning of trial, the State's attorney once again made the identical offer made in October 2009 and March 4, 2010. Applicant was still not willing to accept the offer and instead insisted on counteroffers to the State. After additional plea negotiations with the State's attorney, I notified Applicant that no other plea offer was being made and that, he rejected the offer made by the State, then I was prepared to try his case and would represent him to the best of my ability. At no time was Applicant interested in the offer being made by the State. Although the State did set expiration dates on its offers, in essence, Applicant had the opportunity to accept the offer at any point from October 27, 2009 until the day before trial, March 15, 2010.

(ECF 18-16 at 10).

> The trial court's findings of fact state, in part:
>
> 3. On October 27, 2009, the State's attorney conveyed an offer to Applicant by faxing the offer to Applicant's counsel.
>
> 4. The plea offer to the Applicant was that, in exchange for a plea of guilty to the charge and pleas of "True" to the enhancement paragraphs, the State would recommend fifteen (15) years imprisonment in the Texas Department of Criminal Justice-Institutional Division, fine of $500 plus court costs and court appointed attorney's fees.
>
> 5. The offer conveyed on October 27, 2009, expired on November 25, 2009, without being accepted by Applicant.

11

6. There is no evidence that Applicant's letter to his counsel dated on November 24, 2009, arrived in a timely manner necessary to accept the State's plea offer if Applicant were so inclined.

7. Applicant's letter of November 24, 2009, did not accept the State's plea offer.

8. During the time of Applicant's second letter dated December 15, 2009, there was no existing State's plea offer.

9. On March 4, 2010, the State's attorney conveyed the same offer to Applicant by faxing the offer to Applicant's counsel.

10. The offer conveyed on March 4, 2010, expired on March 10, 2010, without being accepted by Applicant.

11. Between March 4, 2010, and March 10, 2010, Applicant did not convey to his counsel a willingness to accept the State's plea offer.

12. Applicant, through counsel, engaged in plea negotiations and sought reduction in time offers, offense or punishment classification without enhancements and adjudication of the charged offense without an affirmative finding of the use of a deadly weapon.

13. Prior to the start of jury trial, Applicant and Counsel had [an] opportunity to discuss the plea offer recommendation.

14. Counsel correctly admonished Applicant as to the possible outcomes resulting from pleading guilty as well as proceeding to trial.

15. The State did make the same plea offer on at least two occasions.

16. When not accepted, the State did withdraw its plea offer.

17. Prior to allegedly receiving egregious advice from Counsel, Applicant had at least two opportunities to accept the State's plea bargaining offer.

(*Id*. at 4–5.)

In this federal habeas proceeding, Petitioner now argues there is no evidence trial counsel conveyed the State's March 4, 2010 retender of the plea offer to him. (*See* ECF 22 at 10–12). He claims that unlike the offer made on October 27, 2009, there is no paper copy of the retendered plea offer in trial counsel's appellate record. (*See id*. at 11). The trial court considered these

conflicting accounts and trial counsel's affidavit and found the State made the same plea offer on at least two occasions, and Petitioner had at least two opportunities to accept the State's plea offer. (ECF 18-16 at 5). Based on its findings of fact, the trial court concluded "[trial counsel's] performance…did not result in any deficiency that failed to provide Applicant the information necessary in making an informed decision," nor did trial counsel's performance prejudice Petitioner. (*Id*. at 7). The TCCA then denied Petitioner's application for state writ of habeas corpus without written order. (ECF 18-7).

Under its limited habeas corpus review of state factual findings, this Court presumes trial counsel conveyed all plea offers unless Petitioner shows otherwise by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Other than relying on the absence of a paper copy of the retendered plea offer in trial counsel's files provided to Petitioner upon request, Petitioner makes no showing, much less a clear and convincing one, that trial counsel failed to convey the retendered plea offer. *See Teague*, 60 F.3d at 1171 (state court relied on counsel's affidavit to find counsel informed petitioner of plea offer and state court's findings were presumptively correct). Petitioner fails to show the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly-established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, Petitioner is not entitled to relief for IAC on this ground.

### ii. Failure to Quash Indictment or Request State Make an Election

Petitioner asserts his trial counsel failed to quash his indictment, which violated the Double Jeopardy Clause, or failed to request the State make an election. (ECF 22 at 13–14). Petitioner claims he was improperly charged with and convicted of the same aggravated robbery twice

because the indictment alleged two counts of aggravated robbery, which were merely different ways he allegedly committed the same aggravated robbery, and trial counsel failed to object to the indictment prior to trial. (*See id*.). Petitioner further claims this resulted in a trial before a partial jury who assumed Petitioner was charged with committing two separate aggravated robberies. (*See id*. at 13). Petitioner claims there is a reasonable probability that he would have received a lesser sentence from the jury if his indictment did not improperly allege two counts of aggravated robbery. (*See id*.). Petitioner raised this issue in his state habeas proceeding.[1] (*See* ECF 18-18 at 12–13). The TCCA remanded Petitioner's habeas petition to the trial court for findings of fact and conclusions of law regarding Petitioner's claims (*see* ECF 18-11; 18-16 at 1; 18-19; 18-20), but the trial court did not address this issue, and the TCCA denied Petitioner's application for state writ of habeas corpus without written order (ECF 18-7).

The Fifth Amendment to the United States Constitution contemplates three types of double jeopardy: "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Gonzalez*, 76 F.3d 1339, 1343 (5th Cir. 1996). Though the jury found Petitioner guilty of both counts of aggravated robbery and sentenced him to 40 years in prison for each count (ECF 17-10 at 29–30; 18-3 at 36), Petitioner filed a Motion for New Trial arguing he had been convicted twice for the same offense (ECF 17-10 at 63–65), and the trial court granted the motion regarding count two of the indictment (*id*. at 79). Count two was then dismissed with prejudice on the State's motion (*id*. at 80–81), and Petitioner was sentenced to one 40-year term of imprisonment for aggravated robbery, enhanced (ECF 18-3 at 36). The undersigned finds Petitioner's IAC claim

---

[1] The Court notes Petitioner did not cast this claim in terms of the Double Jeopardy Clause in his application for state writ of habeas corpus to the TCCA. (*See* ECF 18-18 at 7–19).

based on an alleged double jeopardy violation unpersuasive. Petitioner was subjected to only one trial and faced the imposition of punishment only once. *See Powell v. Owens*, 43 F.3d 670, at *3 (5th Cir. 1994).

Even if trial counsel was deficient, Petitioner must prove prejudice. Petitioner merely speculates that "it is highly likely that one juror would have given [him] less time for [one] aggravated robbery" if the indictment had not improperly charged him with two counts of aggravated robbery. (*See* ECF 22 at 13). This conclusory statement that the outcome would have been different is insufficient to meet *Strickland's* prejudice element. *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) (Self-serving, conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland's* prejudice element."). Considering it is undisputed that only one aggravated robbery occurred, Petitioner does not explain how the jury could conclude two aggravated robberies occurred merely because the indictment contained two theories under which Petitioner committed a single crime. Petitioner fails to show the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly-established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, Petitioner is not entitled to relief for IAC on this ground.

### iii.    Cumulative Ineffectiveness of Trial Counsel[2]

#### a. Implication of Guilt During Voir Dire

---

[2] Petitioner raised these issues in his state habeas proceeding. (*See* ECF 18-18). The TCCA remanded Petitioner's habeas petition to the trial court for findings of fact and conclusions of law regarding Petitioner's claims (*see* ECF 18-11; 18-16 at 1; 18-19; 18-20), but the trial court did not address these issues, and the TCCA denied Petitioner's application for state writ of habeas corpus without written order (ECF 18-7).

Petitioner claims trial counsel was ineffective by "paint[ing] a scenario [involving] a guilty individual who was not convicted due to a technicality, [which] not only prejudiced the minds of the jury pool, but ensured the members of the panel would not be able to remain impartial." (ECF 22 at 14). "The attorney's actions during voir dire are considered to be a matter of trial strategy. A decision regarding trial tactics cannot be the basis for a claim of [IAC] unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'" *Teague*, 60 F.3d at 1172 (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)). In support of his claim, Petitioner offers the following exchange between trial counsel and a prospective juror during voir dire:

> Trial Counsel: Is there anybody else on the panel that feels like they would not be able to follow the instructions in that type of case? Okay. Let's make sure I get the right -- Henchcliffe?
>
> Prospective Juror Henchcliffe: Yes.
>
> Trial Counsel: You would not be able to do that?
>
> Prospective Juror Henchcliffe: In the situation you just gave, no, probably not. Because I think the cops work too hard to get these kind of people off the streets in order for them to end up getting off on a technicality.

(ECF 22-1 at 32).

At most, the exchange between trial counsel and the prospective juror during voir dire shows the prospective juror believed Petitioner's case may involve a technicality. The exchange does not shed light on what trial counsel allegedly said that could have caused the prospective juror to believe the case involved a technicality. Further, "[d]emonstrating that some veniremen may have been biased, without establishing that any of these biased veniremen actually served on the jury, is insufficient to meet the requisite showing of prejudice under the *Strickland* test." *Teague*, 60 F.3d at 1172–73. With respect to prejudice, Petitioner offers nothing more than a

conclusory statement that "there is a 'reasonable probability' that, but for [trial counsel's] unprofessional errors, the result of the proceeding would have been different…" (ECF 22 at 14). This is insufficient to show prejudice. *See Sayre*, 238 F.3d at 635; *Green v. Johnson*, 160 F.3d 1029, 1042–43 (5th Cir. 1998) (conclusory arguments are insufficient to support IAC claims).

### b. Failure to Request *Jackson-Denno* Hearing

Petitioner claims trial counsel was ineffective by failing to request a hearing regarding the voluntariness of Petitioner's confession. (ECF 22 at 14). According to Petitioner, Petitioner informed trial counsel that during his second confession he was coerced by the detective and under mind-altering substances. (*Id.*). Petitioner claims that despite trial counsel's awareness of these facts, trial counsel did not request a hearing regarding the voluntariness of Petitioner's confession and did not object to the admission of the second confession submitted as State's Exhibit 28. (*Id.*). "The constitutional right recognized in *Jackson v. Denno* is the 'constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness.'" *United States v. Guanespen-Portillo*, 514 F.3d 393, 398 (5th Cir. 2008) (quoting *Jackson v. Denno*, 378 U.S. 368, 376–77 (1964)). In support of his claim, Petitioner offers the following exchange between the trial court and trial counsel:

Court: Would you approach the bench for just a minute?

   (At the bench on the record)

Court: Where are you going with all of this? This is not a drug case. There's probably not a search issue.

Trial Counsel: But there is his confession involved in it and there's – there's a confession involved in it and there may be issues as to the voluntariness or as to the other issues with it.

(ECF 22-1 at 34). Petitioner also cites to a portion of the trial court record showing the State's offering of Petitioner's "offered explanation" to his part in the case, trial counsel's failure to object, and the trial court's admittance of the evidence as State's Exhibit 28. (*Id*. at 36).

With respect to prejudice, Petitioner argues:

> Being that the crux of the State's argument was [Petitioner] had shown "guilt" by the "differences" of the 2 confessions entered into evidence, a Jackson v. Denno hearing would have been able to clear up [Petitioner's] lack of voluntariness as to the 2nd confession. There is a "reasonable probability" that, but for [trial counsel's] unprofessional errors the result of the proceeding would have been different.

(ECF 22 at 14–15). Petitioner does not explain what arguments or evidence would have been offered at such a hearing, nor does he explain how the contents of State's Exhibit 28 amounted to a confession. Petitioner's conclusory allegations are insufficient to show prejudice. *See Sayre*, 238 F.3d at 635; *see also Green*, 160 F.3d at 1042–43.

### c. Failure to Object to State's Exhibit 3A, 32, and Expertise of State's Weapons Witness

Petitioner claims trial counsel was ineffective by failing to object to the admittance of State's Exhibit 3A and 32—a knife and identifying information of the victim. (ECF 22 at 15). Petitioner claims neither were proven to have been in his possession. (*Id*.). Petitioner further claims trial counsel failed to object to "the expertise [of] a State's witness on weapons and [their] lethalness." (*Id*.). According to Petitioner, trial counsel's failures "did not preserve the opportunity for a collateral attack against the admittance of this evidence and testimony." (*Id*.). Petitioner does not specify what objections should have been made, nor does he allege facts showing how he was prejudiced by trial counsel's alleged failures. Petitioner's conclusory allegations are insufficient to show prejudice. *See Sayre*, 238 F.3d at 635; *see also Green*, 160 F.3d at 1042–43.

### d. Failure to File Motion Revealing State's Informer, Request a Lesser Included Offense Instruction, and Request Section 2.01 and 2.05 of the TPC be Added to the Jury Charge

First, Petitioner claims trial counsel was ineffective by failing to identify the State's informer, whose testimony could have been relevant, considering the "tip" the informer gave involved events before and/or during the alleged offense. (ECF 22 at 15). Petitioner asserts the informer's testimony could have been used to impeach one of the State's witnesses. (*Id*.). Second, Petitioner claims trial counsel was ineffective by failing to request a lesser included offense instruction be added to the jury charge, which left the jury with only the options of convicting Petitioner of aggravated robbery or not. (*Id*. at 16). Finally, Petitioner claims trial counsel was ineffective by failing to request Sections 2.01 and 2.05 of the TPC be added to the jury charge because he missed an opportunity to explain to the jury what "beyond a reasonable doubt" means. (*Id*.).

With respect to the State's informer, Petitioner fails to provide any indication as to the substance of the informer's testimony, let alone any indication that this testimony would have been favorable to his defense. *See Trevino v. Davis*, 829 F.3d 328, 338 (5th Cir. 2016); *see also Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (IAC claims alleging counsel failed to call a witness require petitioner to show the testimony would have been favorable to petitioner in order to show prejudice under *Strickland*).

With respect to a lesser included offense, "[u]nder Texas law, there is a two-step test to determine whether a lesser included offense instruction should be given: first, the lesser included offense must be within the proof necessary to establish the offense charged; second, there must be some evidence in the record that if the defendant is guilty, he is guilty only of the lesser offense." *Richards v. Quarterman*, 566 F.3d 553, 568 (5th Cir. 2009). Petitioner suggests one possibly lesser included offense—fraudulent possession or use of identifying information. (ECF 22 at 16). Section 32.51 of the TPC provides in part that fraudulent use or possession of identifying information

occurs when "[a] person commits an offense if the person, with the intent to harm or defraud another, obtains, possesses, transfers, or uses an item of identifying information of another person without the other person's consent." Tex. Penal Code § 32.51(b)(1).

The Court must determine whether fraudulent possession or use of identifying information is a lesser included offense of aggravated robbery. A robbery occurs when, "in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property," a person:

(1) Intentionally, knowingly, or recklessly causes bodily injury to another; or

(2) Intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

Tex. Penal Code § 29.02(a). Aggravated robbery occurs when a person "commits robbery as defined in Section 29.02" and:

(1) Causes serious bodily injury to another;

(2) Uses or exhibits a deadly weapon; or

(3) Causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the other person is:

(A) 65 years of age or older; or

(B) A disabled person.

*Id*. § 29.03(a). Because fraudulent possession or use of identifying information is not a lesser included offense of aggravated robbery, this claim fails. Finally, even assuming the trial court failed to instruct the jury that it must find each element of the offense was proved beyond a reasonable doubt, which Petitioner has not shown, Petitioner's conclusory allegations are insufficient to show prejudice. *See Sayre*, 238 F.3d at 635; *see also Green*, 160 F.3d at 1042–43.

### e. Failure to Provide Adequate Defense or Investigate Why Another was not Necessary, Ill Preparedness, and Failure to Present any Mitigating or Character Evidence During the Punishment Phase

First, Petitioner claims trial counsel was ineffective because trial counsel pursued a "race technicality" defense without adequately investigating potential defenses or discussing the same with Petitioner. (*See* ECF 22 at 16–17). Specifically, Petitioner points to trial counsel's statement during closing argument that Petitioner is not a "stocky white male." (ECF 22-1 at 56). Petitioner claims his dad is actually white and Petitioner considers himself more white than Hispanic. (ECF 22 at 17). Second, Petitioner claims trial counsel was ineffective because trial counsel did not adequately prepare or investigate and failed to present mitigating or character evidence. (*Id*. at 17–18). Petitioner claims "[h]ad [trial counsel] interviewed [the] State's witnesses prior to trial, he would have been made aware of the video police alleged a loss preventions employee had reviewed outside of their presence." (*Id*. at 17).

"[C]ounsel has a duty to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary." *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997). However, "[a]n applicant 'who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" *Trevino*, 829 F.3d at 338 (quoting *Gregory*, 601 F.3d at 352). Petitioner has not shown trial counsel was unaware that Petitioner's dad is white and Petitioner considers himself more white than Hispanic, nor has he shown trial counsel's knowledge of this information would have altered the outcome of trial. With respect to a failure to investigate, Petitioner offers only his unsupported allegation that trial counsel would have discovered a "video police alleged a loss preventions employee had reviewed outside of their presence." Petitioner has not shown trial counsel did not know about the video. Further, he does not state what the video

shows or how it would have altered the outcome of the trial. With respect to mitigating or character evidence, Petitioner does not state what evidence trial counsel failed to offer, or how trial counsel's alleged failure to offer such evidence prejudiced him. Petitioner's conclusory allegations are insufficient to show prejudice. *See Sayre*, 238 F.3d at 635; *see also Green*, 160 F.3d at 1042–43.

### f. Failure to File Motion to Poll Jury

Petitioner claims trial counsel was ineffective because he failed to poll the jury, and a poll "could have revealed at least one juror felt pressured into going along with the 'majority' on guilt/innocence or punishment.'" (ECF 22 at 18). Petitioner claims had trial counsel polled the jury, "he would [have] found out that at least one juror did feel pressured, as [Petitioner's] aunt noticed such a posting on an 'after the fact' blog." (*Id.*). However, Petitioner does not offer the contents of the blog post or an affidavit from his aunt. Petitioner's conclusory allegations are insufficient to show prejudice. *See Sayre*, 238 F.3d at 635; *see also Green*, 160 F.3d at 1042–43.

### g. Cumulative Effect

The Fifth Circuit Court of Appeals has stated "there is no precedent supporting the idea that a series of 'errors' that fail to meet the standard of objectively unreasonable can somehow cumulate to meet the high burden set forth in *Strickland*." *United States v. Thomas*, 724 F.3d 632, 648 (5th Cir. 2013). Further, the Fifth Circuit Court of Appeals recently stated "[t]he Supreme Court has never squarely held that the cumulative error doctrine governs [IAC] claims." *Hill v. Davis*, 781 F. App'x 277, 280–81 (5th Cir. 2019). Even if the cumulative error doctrine applied to IAC claims, Petitioner has not shown trial counsel's alleged errors, taken cumulatively, entitle him to relief. *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) ("Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised.").

Although Petitioner asserts nine different theories of IAC with respect to trial counsel, Petitioner fails to show the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly-established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, Petitioner is not entitled to relief for IAC on these grounds.

### iv.    Ineffective Assistance of Appellate Counsel[3]

To prevail on a claim of IAC on appeal, a petitioner must show that had counsel performed differently, there is a reasonable probability petitioner would have prevailed on appeal. *Duhamel v. Collins*, 955 F.2d 962, 967 (5th Cir. 1992); *Sharp v. Puckett*, 930 F.2d 450, 453 (5th Cir. 1991) (citing *Strickland*, 466 U.S. at 687).

### a. Failure to Challenge Trial Court's Jurisdiction

Petitioner claims appellate counsel was ineffective because he failed to address the indictment's alleged violation of the Double Jeopardy Clause and the trial court's jurisdiction on appeal. (ECF 22 at 19–20). Specifically, Petitioner claims he was improperly charged with and convicted of the same aggravated robbery twice because the indictment alleged two counts of aggravated robbery, which were merely different ways he allegedly committed the same aggravated robbery. (*See id.*). Petitioner argues that because his indictment was not truly one indictment with two counts, but rather one indictment alleging two different means of committing aggravated robbery in separate counts, the trial court did not have jurisdiction. (*See id.*). Petitioner

---

[3] Petitioner raised these issues in his state habeas proceeding. (*See* ECF 18-18). The TCCA remanded Petitioner's habeas petition to the trial court for findings of fact and conclusions of law regarding Petitioner's claims (*see* ECF 18-11; 18-16 at 1; 18-19; 18-20), but the trial court did not address these issues, and the TCCA denied Petitioner's application for state writ of habeas corpus without written order (ECF 18-7).

further claims this resulted in a trial before a partial jury who assumed Petitioner was charged with committing two separate aggravated robberies. (*See id*. at 20).

Although appellate counsel did not explicitly challenge the trial court's jurisdiction based on the indictment's alleged double jeopardy violation, appellate counsel did challenge the trial court's denial of Petitioner's motion for new trial as to count one. (*See* ECF 17-4). Specifically, appellate counsel pointed out the separate counts in the indictment merely alleged different means by which the State believed Petitioner committed a single aggravated robbery, yet the trial court authorized separate convictions for both counts in the indictment. (*Id*. at 8). Appellate counsel further argued that the proper remedy was a grant of a new trial as to both counts because the counts were not severable since they related to the same aggravated robbery. (*Id*. at 11–13). The Court of Appeals rejected this argument and stated that "when an appellant has been subjected to multiple punishments for the same conduct, the proper remedy on appeal is to affirm as to the most serious offense and to vacate the other convictions." (ECF 17-8 at 7). The court stated the grant of a new trial as to count two was an acceptable means of curing the violation of the rule against multiple punishments for the same conduct. (*See id*.). Otherwise, Petitioner would be forced "to appeal the multiple convictions and, ultimately, have the appellate court take the exact same course of action that the trial court has taken in this case." (*Id*.).

As previously, stated the Fifth Amendment contemplates three types of double jeopardy: "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *Gonzalez*, 76 F.3d at 1343. Petitioner was subjected to only one trial and faced the imposition of punishment only once. *See Powell*, 43 F.3d 670, at *3. Further, the court of appeals found the trial court cured any violation of the rule against multiple punishments for the same conduct by granting a new trial and

dismissal as to count two. Thus, Petitioner has not shown a reasonable probability exists that any appellate argument based on double jeopardy would have been successful.

### b. Failure to Raise Insufficiency of the Evidence Claim

Petitioner claims appellate counsel was ineffective because he failed to raise insufficiency of the evidence on appeal. (ECF 22 at 20–21). Petitioner claims the State "failed to prove [Petitioner] ever had possession of the alleged weapon from the robbery…, nor was there evidence on the crucial element of serious bodily injury, as defined in the jury charge." (*Id*. at 20). In support of his claim that the State failed to prove the robbery weapon was ever in his possession, Petitioner offers the following exchange between trial counsel and a witness:

> Trial Counsel: What the examination of the knife tells you, isn't it, is that you have no personal knowledge from anything you've done in this case, that [Petitioner] ever had that knife in his hands, do you?
>
> Witness: No, sir.
>
> Trial Counsel: That's all I have, Judge.
>
> State: Nothing further.

(ECF 22-1 at 78). It is unclear what witness the exchange involves, and beyond conclusory statements, Petitioner offers no other explanation why his conviction would have been reversed had counsel appealed on this ground. Petitioner's conclusory allegations are insufficient to show any appellate argument based on insufficiency of the evidence would have been successful. *See Sayre*, 238 F.3d at 635; *see also Green*, 160 F.3d at 1042–43.

Additionally, the State did not need to prove serious bodily injury to the victim to prove Petitioner committed aggravated robbery. Section 29.02 of the TPC states three ways a person can commit aggravated robbery. Although "caus[ing] serious bodily injury to another" is one way in which aggravated robbery may occur, aggravated robbery may also occur if a person "uses or

exhibits a deadly weapon." Tex. Penal Code § 29.03(a). Count one of the indictment, which Petitioner was convicted of and punished for, states Petitioner "use[d] and exhibit[ed] a deadly weapon, namely, a knife." (ECF 18-3 at 43). Petitioner is not entitled relief on this ground.

### c. Failure to Challenge Trial Court's Discretion

Petitioner claims appellate counsel was ineffective because he failed to challenge the trial court's admittance of evidence obtained in a search when the only evidence the State had of consent to the search was hearsay testimony. (ECF 22 at 21–22). Beyond conclusory statements, Petitioner does not explain why his conviction would have been reversed had counsel appealed on this ground. Petitioner's conclusory allegations are insufficient to show any appellate argument based on the State's failure to prove consent to a search would have been successful. *See Sayre*, 238 F.3d at 635; *see also Green*, 160 F.3d at 1042–43.

### d. Failure to Raise Assistant District Attorney's Failed Duty to Investigate Exculpatory Evidence

Petitioner claims appellate counsel was ineffective because he failed to raise the issue of the Assistant District Attorney's ("ADA") alleged failure to investigate exculpatory evidence. (ECF 22 at 22). Petitioner claims the ADA did not fulfill her duty to investigate exculpatory evidence because she failed to investigate the "'security' footage Detective Sgt. Vogel testified a loss preventions officer viewed outside of his presence." (*Id.*). Petitioner further claims the "footage could have exonerated [him] by showing he wasn't even in the same location as [the victim] on the night in question." (*Id.*). However, Petitioner provides no support for his claim that such a video exists, and does not explain what the video shows beyond conclusory statements. Petitioner's conclusory allegations are insufficient to show any appellate argument based on the ADA's alleged failure to investigate exculpatory evidence would have been successful. *See Sayre*, 238 F.3d at 635; *see also Green*, 160 F.3d at 1042–43.

With respect to Petitioner's various claims of ineffective assistance of appellate counsel, Petitioner fails to show the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly-established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, Petitioner is not entitled to relief for IAC on any of these grounds.

## V.    RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by Petitioner be DENIED.

## VI.    INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED December 21, 2020.

_Lee Ann Reno_
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).